COMMONWEALTH *vs.* NICHOLAS J. BARRAS.

Suffolk.    October 15, 1974. — February 6, 1975.

Present: HALE, C.J., ROSE, KEVILLE, GRANT, & ARMSTRONG, JJ.

*Evidence,* Opinion: expert; On cross-examination; Redirect examination; Judicial discretion. *Error,* Whether error harmful. *Practice, Criminal,* Argument by prosecutor.

Where there was no evidence in an arson case that the fire had been caused by carelessness, exclusion of a question to a deputy fire chief as to whether the fire was caused by carelessness was not prejudicial to the defendant. [46]

In an arson case, there was no error in excluding a question on cross-examination of a deputy fire chief as to whether he had received information from the State fire marshal that the fire was started by gasoline. [46-47]

In an arson case exclusion on cross-examination of a question, asking a deputy fire chief whether if gasoline had been used to start the fire he could determine it, was within the discretion of the judge and not prejudicial to the defendant. [47]

In an arson case a deputy fire chief, who had extensive experience fighting and investigating fires, was qualified to testify concerning what happens to gasoline exposed to open air and what effect warm weather has on gasoline. [47-48]

In an arson case, there was no error in the admission of a police
chemist's testimony on the effect of a warm day on the volatility of
gasoline, where gasoline was the suspected igniting agent and there
was later testimony that the day of the fire had been warm and
sunny. [48]

At the trial of an arson indictment, where the question how the de-
fendant knew the address of a Revere police officer living in Chelsea
who had given the defendant certain traffic citations was raised on
cross-examination of the officer, there was no error in permitting
the officer on redirect examination to testify that his name was on
the citations and that it was listed in a telephone directory includ-
ing both Revere and Chelsea. [48-49]

In a criminal trial evidence of the circumstances in which the defend-
ant threatened a police officer who had given him traffic citations,
asked for directions to the street on which the officer lived, and
bought gasoline in a can at a gasoline station two miles from the
officer's home, and the officer's wife investigated footsteps she had
heard on the back steps and discovered the porch ablaze warranted
the defendant's conviction of arson. [45-49]

In an arson case, there was no error in the prosecutor's descriptions,
based on evidence, of the defendant as a "hot head" and a "wise
guy" and of the occupants of the burned house as "victims." [49]

In an arson case, the prosecutor's description of the defendant as a
"character," for which the judge admonished him, was not reversible
error. [49-50]

In an arson case, harm, if any, caused by a prosecutor's remark on
withholding evidence was obviated by the judge's instructions to the
jury. [50]

INDICTMENT found and returned in the Superior Court
on October 13, 1972.

The case was tried before *Linscott, J.*

*Joseph C. Delcore* for the defendant.

*Roger A. Emanuelson,* Assistant District Attorney, for
the Commonwealth.

KEVILLE, J.    The defendant was indicted, tried to a jury
and convicted of arson. His appeal is subject to G. L. c. 278,
§§ 33A-33G. Pertinent evidence is summarized. Additional
testimony will be included in our discussion of those assign-
ments of error which have been argued.

On August 3, 1972, Theodore Dawicki, a Revere police
officer, resided in a single family dwelling at 97 Parker
Street, Chelsea, with his wife and three children. At about
1:00 A.M. on that day, Dawicki and a partner issued a
citation to the defendant after having observed his black
1972 Plymouth Barracuda automobile going through a red

light. The officers detected the odor of alcohol on his breath. He asked for a break and was told by Dawicki that the only break he would get would be the opportunity to go home (which was two hundred yards away). A few minutes thereafter, they observed the same vehicle exceeding the speed limit. They pursued it to the Revere police station where the defendant left the car and entered the station. Within the station Dawicki gave the defendant a citation for speeding. At that time the defendant threatened Dawicki.[1] In the station, Dawicki again detected the odor of alcohol on the defendant's breath.

A few minutes before 2:00 A.M. the defendant stopped his car and asked two Chelsea policemen where "Park" or "Parker" Street was located. When told that Park Street was near the police station and Parker Street was in the opposite direction, he requested and was given directions to Parker Street. At approximately 2:20 or 2:30 A.M., at a filling station two miles distant from Dawicki's home, the defendant purchased gasoline for his Plymouth and an additional gallon and a half in a can. He left more than the usual deposit and said that he was going to see somebody. He returned the can twenty or forty-five minutes later and received his deposit. At that time the attendant noticed the smell of gasoline in the car and gave the defendant a rag with which the latter wiped off the rear seat.

Approximately an hour after Dawicki's encounter with the defendant at the police station, at a time when the jury could have found that the defendant had already purchased the gasoline, Dawicki's wife, asleep in their home, awoke and heard footsteps on the back stairs. Between three and five minutes later, she went downstairs and discovered the porch ablaze. She called the fire department, aroused the children and left the house. A Chelsea police officer arrived first and saw flames on the porch stairs and over the entrance to a doorway.

---

[1] Dawicki testified that the defendant said to him, "I won't forget you for this. I will get even with you for it." Another officer testified that he heard the defendant say to Dawicki, "I'll get you for this, and it will be sooner than you think."

At about 3:30 A.M. Dawicki, having returned to duty from a visit to his home to make sure that his family was all right, saw the defendant standing in the street beside the same car which Dawicki had seen twice previously that night. The defendant still had an odor of alcohol on his breath and was bracing himself against the car. When asked by Dawicki where he had been during the last hour, he replied that he had been with a friend but he did not disclose the friend's name. He was arrested for drunkenness. Acting on the defendant's request to lock his car, Dawicki, while shutting the car window, felt dampness on the back seat and smelled gasoline.

1. The defendant contends that the judge erred in excluding a question to Deputy Chief Graves of the Chelsea fire department on cross-examination whether, based upon his examination, he could say that the fire was not caused by carelessness. Graves, a fireman for thirty-four years, had arrived while the fire was in progress and had examined the scene. There was no evidence indicating that the fire had been caused by carelessness. While, as the defendant asserts, the opinion of a properly qualified person concerning the cause of a fire is generally admissible in evidence (*Commonwealth* v. *Harris*, 1 Mass. App. Ct. 265, 268 [1973], and cases cited), mere speculation as to the cause of the fire should not be permitted. See *Nass* v. *Duxbury*, 327 Mass. 396, 401, 402 (1951); *King's Case*, 352 Mass. 488, 491 (1967). And where, as here, substantial rights of the defendant are not shown to have been prejudiced by the exclusion of a question on cross-examination the ruling of the judge will not be disturbed. *Commonwealth* v. *Corcoran*, 252 Mass. 465, 486 (1925). *Commonwealth* v. *Nassar*, 351 Mass. 37, 43-44 (1966).

2. The defendant complains that the judge erred in not allowing him on cross-examination to ask Deputy Chief Roach, head of the Chelsea fire prevention bureau, if he had received information from the State fire marshal whether this fire was started by the use of gasoline. The question was properly excluded as it sought not only an answer to whether information had been received by the witness but

the substance of the information as well. The latter would clearly have been hearsay. And no attempt was made to rephrase the question to require a response to only its first part. Moreover, as the defendant sought only a "Yes" or "No" answer, he would not have been benefited by the allowance of the question. See *Perry* v. *Carter,* 332 Mass. 508, 513 (1955); *Commonwealth* v. *Baker,* 348 Mass. 60, 63-64 (1964).

3. The defendant assigns as error the exclusion on cross-examination of a question to Deputy Chief Roach, "[I]f there had been gasoline used from your examination of what you saw, would you be able to determine whether gasoline had been used?" The defendant contends that Roach, as an expert, should have been permitted to respond to this question. The scope of hypothetical questions must be left to the discretion of the judge (*Commonwealth* v. *D'Agostino,* 344 Mass. 276, 279-280 [1962], cert. den. 371 U. S. 852 [1962]) and whether a question is objectionable as to form or relevancy is for him to decide. *Commonwealth* v. *Slaney,* 345 Mass. 135, 142 (1962). Furthermore, there was no showing that the exclusion of the question was prejudicial to the substantial rights of the defendant. *Commonwealth* v. *Greenberg,* 339 Mass. 557, 580-581 (1959). *Commonwealth* v. *Nassar, supra.*

4. Deputy Chief Roach arrived at the scene about eight hours after the fire. He testified that in the course of his investigation he observed a hose attached to a water outlet located about four feet from the porch. The hose was partially burned and both he and Dawicki testified that they had smelled what they believed to be gasoline upon it. He took a six foot section of the hose to the State police laboratory five miles away. The section had been placed uncovered in the back of his station wagon since he had no sealed container at hand. He testified that he opened the rear window because of the odor of gasoline in the vehicle. Examination at the laboratory failed to show the presence of flammable fluids on the hose. The defendant asserts that it was error to have allowed Roach to testify on redirect examination as to what happens to gasoline

when exposed to open air and what effect warm weather has upon gasoline. He contends that the witness was not qualified to give such testimony.

Roach had twenty-eight years of experience as a fireman and it was developed on cross-examination that he had examined more than five hundred fires in the course of his fire prevention duties. On cross-examination he had been questioned as to "how there could be elimination of gas if certain precautions weren't taken," and whether he had taken every precaution, based upon his experience, to preserve the smell on this hose. In these circumstances, it was discretionary with the judge to permit the witness on redirect examination to offer an explanation for the absence of gasoline on the hose when examined by the State police chemist. See *Commonwealth* v. *Gardner,* 350 Mass. 664, 668-669 (1966); *Commonwealth* v. *Douglas,* 354 Mass. 212, 225 (1968), cert. den. 394 U. S. 960 (1969).

5. The defendant claims that the judge erred in permitting a State police chemist to testify what effect a warm day has upon the volatility of gasoline. He argues that, inasmuch as no foundation had been laid for the question and as there was no evidence that the fire had occurred on a warm day, the question improperly assumed facts not in evidence. There was no error. The transcript shows that the question was allowed on the prosecutor's representation that there would be later testimony in regard to the weather on the day of the fire. There was later testimony from Dawicki that the day in question was warm and sunny and no exception was taken by the defendant to the admission of this testimony. See *Anderson* v. *Albertstamm,* 176 Mass. 87, 91-92 (1900). *Wing* v. *Commonwealth,* 359 Mass. 286, 289 (1971).

6. On redirect examination Dawicki testified that he signed the citations given to the defendant as "T.J. Dawicki," and that in August, 1972, he had a telephone listed in the "North Shore, Chelsea, Revere and Winthrop" telephone book. The defendant argues that the admission of this evidence on redirect examination was error. On cross-

examination, Dawicki had been questioned concerning the citations and to the effect that, since he was a Revere police officer living in Chelsea, the defendant could not have known where he lived. As the subject had been introduced on cross-examination, it was permissible on redirect examination for the witness to explain how the defendant might have gained such knowledge, as his name was listed in the telephone directory which included Chelsea and Revere. *Commonwealth* v. *Galvin,* 310 Mass. 733, 747 (1942). *Commonwealth* v. *St. Pierre,* 362 Mass. 886 (1972). And it is notable that, on recross-examination, defendant's counsel elicited from Dawicki the information that in the telephone directory he was listed as Theodore J. Dawicki residing on Parker Street.

7. There was no error in the denial of the defendant's motion for a directed verdict. There was sufficient evidence of the defendant's guilt to warrant submission of the case to the jury. *Commonwealth* v. *Altenhaus,* 317 Mass. 270, 271 (1944). *Commonwealth* v. *Baron,* 356 Mass. 362, 365 (1969). *Commonwealth* v. *Stone,* 366 Mass. 506, 514-515 (1974). No purpose would be served by reiterating the evidence from which the jury could have determined the guilt of the defendant. *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197 (1968), cert. den. sub nom. *Bernier* v. *Massachusetts,* 393 U. S. 1058 (1969). *Commonwealth* v. *Lussier,* 364 Mass. 414, 420 (1973).

8. Finally, the defendant asserts that the judge erred in denying his motion for a mistrial based upon allegedly prejudicial comments of the prosecutor in closing argument. The prosecutor's characterization of the defendant as a "hot head" and a "wise guy" and his description of Mrs. Dawicki and her children as "victims," although inapt, were founded upon evidence and constituted no error. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 27-28 (1923). *Commonwealth* v. *Connolly,* 308 Mass. 481, 496-497 (1941). His description of the defendant as a "character," for which he was admonished by the judge, was not such an impropriety as to warrant reversal. *Commonwealth* v. *Smith,*

342 Mass. 180, 187-188 (1961). *Commonwealth* v. *Heard,* 360 Mass. 855 (1971). The record shows that a remark of the prosecutor with respect to the withholding of evidence was simply a response to remarks of defense counsel in his closing argument and whatever harm might have resulted therefrom was obviated by the judge's immediate instruction and in his charge to the jury. *Commonwealth* v. *Stout,* 356 Mass. 237, 244 (1969). See *Commonwealth* v. *White,* 2 Mass. App. Ct. 258, 265 (1974).

*Judgment affirmed.*