COMMONWEALTH *vs.* NEIL BURNETT.

Essex.    March 1, 1976. — August 25, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER, & WILKINS, JJ.

*Practice, Criminal,* Charge to jury, Directed verdict, Argument by prosecutor. *Homicide.*

In a murder case resulting in a conviction on ample evidence of murder in the first degree, where the jurors may have gathered the incorrect impression from defense counsel that the defendant, if convicted, was subject to the death penalty, and he did not object or except to the judge's charge that if a verdict of first degree murder should be returned the defendant would receive a life sentence with no parole eligibility or that if a verdict of second degree murder should be returned he would receive a life sentence with parole eligibility, it was held that the charge did not require reversal of the judgment. [16-17]

Circumstantial evidence at a criminal trial warranted the jury in finding that the defendant went into a store, was armed and shot the proprietor, cleaning out two bill compartments of the cash register; there was no error in the denial of the defendant's motion for a directed verdict on an indictment charging armed robbery, and the judge was correct in charging the jury under the felony murder rule

under an indictment charging murder in the first degree [17-18]; fur-
thermore, evidence warranted a finding of first degree murder in
that the defendant acted with deliberately premeditated malice
aforethought [18].
No reversible error was shown at a criminal trial by the improper lan-
guage of the prosecutor in his argument, to which no request for
an instruction to disregard was made or objection lodged or excep-
tion taken. [18-19]

INDICTMENTS found and returned in the Superior Court
on January 16, 1973.

The cases were tried before *Brogna, J.*

*Malvine Nathanson* for the defendant.

*Michael T. Stella, Jr.,* Assistant District Attorney, for
the Commonwealth.

REARDON, J. This case is here under the provisions of
G. L. c. 278, §§ 33A-33G, on an assignment of errors by
the defendant who was found guilty on two indictments,
one charging murder in the first degree and the other
charging armed robbery. The jury could have found the
facts to be as follows.

On the morning of August 26, 1972, Joseph Saba, who
owned and operated a variety store in Methuen, was killed
by multiple gunshot wounds caused by bullets from a .22
caliber gun which belonged to one Richard Waithe. Waithe
was subsequently indicted as a principal, being likewise
charged with murder and armed robbery. He agreed, how-
ever, to testify at the trial of the defendant and did so on
the basis that the indictments against him would be nol
prossed or dismissed, and that he would be charged as an
accessory after the fact.

On August 25, 1972, the defendant, Waithe and two
women with whom they were living engaged in a period of
drinking at their apartment in Lawrence followed by a ride
around Lawrence, Methuen and Haverhill in Waithe's car,
from which they returned to the apartment about 10 P.M.
or 10:30 P.M. At 12:30 A.M. Waithe and the defendant
went driving again in the same car, returning once more
to the apartment between 2:30 A.M. and 3 A.M. Thereafter,
about 3:15 A.M., the defendant and Waithe again left the

apartment to drive around in Waithe's car. Having stolen some bread from the exterior of a market, they procured some gasoline at a gasoline station in Methuen and continued to travel around the same areas. Between 6:45 A.M. and 7:15 A.M. they paused across the street from Saba's market in Methuen, and the defendant remarked that he was going to steal some cold cuts to go with the bread. The defendant at this time was dressed in a pair of cutoff dungarees and a dungaree jacket. Waithe remained in the car and the defendant walked around a corner. Forty-five to sixty seconds later he saw the defendant in the middle of the street with a gun in his hand, following which the defendant disappeared from view around the corner. Some fifteen or twenty seconds later he heard some sounds that resembled a car backfiring, followed by the defendant running toward the car. As the defendant entered the car, Waithe saw a gun which he recognized as his in the defendant's hand. The defendant then announced, "I just shot a man," and advised Waithe, "Get out of here or I'll shoot you, too!"

The cash register in Saba's market ordinarily contained approximately $150 in denominations of $10, $5, and $1 bills as business opened in the morning. A Methuen police sergeant viewing the cash register about 8 A.M. noted $10 and $5 bills but observed two empty compartments in the register with no $1 bills to be seen.

Several witnesses testified to hearing the shots inside Saba's market and to seeing a tall, thin black man emerge from the store with a gun in his hand; one witness observed that the man was wearing dungaree shorts. Waithe's apartment was searched pursuant to a search warrant on August 30, 1972, and the Methuen police officer seized a pair of dungaree shorts on which a State chemist found evidence of human blood. There was evidence that one of the women who lived at the apartment had seen the defendant practicing with a gun which resembled a .22 caliber pistol. This same witness also testified to seeing a roll of money in the defendant's possession late on August 26. The defendant endeavored to account for the money in his

possession, stating that he had made a sale of certain stolen furs and watches. There was additional evidence from other witnesses on facets of the case bearing on the guilt of the defendant.

Three assignments of error are pressed.

1. It is first argued that portions of the trial judge's charge to the jury regarding sentencing and parole eligibility were erroneous and require reversal. Included in the charge was language that the jury actually impose the sentence and that if they found the defendant guilty of murder in the first degree he would receive a life sentence with no parole eligibility, while if they returned a verdict of murder in the second degree he would also receive a life sentence but would be eligible for parole in fifteen years. Reference is made by the defendant to a long-standing rule in Massachusetts that the trial judge may not engage in such instructions. See *Commonwealth* v. *Mutina,* 366 Mass. 810, 823 n.12 (1975). See also the discussion by Justice Spalding in *Commonwealth* v. *Goodwin,* 356 Mass. 632, 633-634 (1970), of *Commonwealth* v. *McNeil,* 328 Mass. 436, 442 (1952). While there was a failure to except to that portion of the charge which is under attack in this assignment, we nonetheless consider it under G. L. c. 278, § 33E, mindful of the principle that while we may examine errors not brought to the judge's attention under the above section, we will only reverse on a showing of grave prejudice. See *Commonwealth* v. *Coleman,* 366 Mass. 705, 711 (1975). We reiterate what we have said in prior opinions. The trial judge is not to explain to the jury what parole conditions are for murder in the first degree or what they are if the defendant is found guilty of murder in the second degree. Such instructions tread closely to reversible error and are to be avoided. The Commonwealth argues that language of the charge in *Commonwealth* v. *Goodwin, supra,* parallels the trial judge's charge on this phase of the case here. However, in the *Goodwin* case the jury were told that "*the matter of parole in the statute* is of no concern to the jury," while here the jury were advised that

murder in the second degree would carry a life term with parole eligibility after fifteen years.

In this instance a review of the transcript indicates that the comments of defense counsel dwelt on the same subject of possible sentences for the crime of murder. It could be argued that there was some necessity on the part of the judge to engage in instructions along the lines that he gave them at least to the extent of correcting the impression the jurors may have gathered from defense counsel that the defendant was subject to the death penalty if convicted. Furthermore, the failure to object or except to this aspect of the judge's charge may have been the result of a deliberate tactical decision on the part of the defense. Counsel may well have reasoned that informing the jury of the sentencing outcomes associated with possible verdicts improved his client's chances of avoiding a verdict of guilty of murder in the first degree; and, in fact, most of the cases cited on this issue by the parties involve a defendant asserting that it was error for the judge to refuse to give such instructions. See *Commonwealth* v. *McNeil*, 328 Mass. 436, 442 (1952); *Chapman* v. *United States*, 443 F.2d 917, 920 (10th Cir. 1971); *United States* v. *Del Toro*, 426 F.2d 181, 184 (5th Cir.), cert. denied, 400 U.S. 829 (1970).

Finally, the Commonwealth's case was very strong and there was ample evidence to support the jury's verdict of guilty of murder in the first degree. We therefore do not agree with the defendant that there should be a reversal on this assignment notwithstanding the foregoing reservations on the nature of this portion of the charge.

2. There was no error in the denial of the defendant's motion for a directed verdict on the charge of armed robbery and, hence, no error in charging the jury on felony murder. There was sufficient evidence to indicate that the defendant had committed the offense of armed robbery. Evidence was adduced indicating what the cash register usually contained the first thing on a working morning, that there were two empty compartments and no $1 bills

to be found in the register, and that the defendant was seen on the day of the crime with "a roll of money." The jury could have found that the defendant came into the store, was armed and shot the deceased, cleaning out the two bill compartments which were close at hand. There was on the testimony a case for the jury on this matter. While the evidence adduced on the robbery aspect of the case was circumstantial, it had probative value. See *Commonwealth* v. *Medeiros*, 354 Mass. 193, 197 (1968), cert. denied sub nom. *Bernier* v. *Massachusetts*, 393 U.S. 1058 (1969); *Commonwealth* v. *Swartz*, 343 Mass. 709, 712 (1962). In view of the foregoing the judge was correct in charging the jury under the felony murder rule. See *Commonwealth* v. *Gricus*, 317 Mass. 403, 412 (1944), and cases cited.

Furthermore, while an improper charge on felony murder may have required us to reverse or modify the verdict (see *Commonwealth* v. *White*, 353 Mass. 409, 426 [1967], cert. denied, 391 U.S. 968 [1968]), we simply note that there was evidence from which the jury could have found that the defendant perpetrated a murder in the first degree in that he acted with deliberately premeditated malice aforethought. There was competent evidence that the defendant entered the store on two occasions, the second just subsequent to the time when he was observed by Waithe standing in the middle of the street holding a gun, and that he later returned to Waithe's automobile stating, "I just shot a man." The victim was shot six times. There does not appear to have been any evidence of mitigating circumstances. The jury were entitled to find that the defendant did the shooting and acted after "the prior formation of a purpose to kill." *Commonwealth* v. *McLaughlin*, 352 Mass. 218, 230, cert. denied, 389 U.S. 916 (1967).

3. There is argument by the defendant referring to abusive epithets employed by the prosecutor in argument, together with statements of his personal belief of the defendant's guilt and calling for sympathy for the victim. A review of the transcript indicates transgressions in this respect on the part of both the defense and the prosecu-

tion counsel. We do not condone such conduct even in light of our language in *Commonwealth* v. *Smith,* 342 Mass. 180, 186 (1961), where we said on a similar situation that the statements of the prosecutor constituted "an attempt to fight fire with fire." In this case there was no request by counsel for instruction to the jury to disregard the prosecutor's comments, and no objection was lodged or exception taken. The judge charged the jury that it was their function and their function alone to find the facts and that it was their memory of the evidence and the inferences therefrom which would govern and not the arguments of counsel. See *Commonwealth* v. *Coleman,* 366 Mass. 705, 713-714 (1975); *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 536-539 (1971). As much as we dislike the language of the prosecutor in argument, no reversible error is shown.

4. Consonant with our duty under G. L. c. 278, § 33E, we have reviewed the transcript and record of the case and see no reason to upset or modify the judgments.

*Judgments affirmed.*