COMMONWEALTH *vs.* CURTIS LEE EARLTOP.

Suffolk.    September 17, 1976. — March 21, 1977.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Homicide.    Evidence,* Admissions and confessions.    *Practice, Criminal,*
    Disclosure of evidence before grand jury, Argument by prosecutor,
    Capital case.

Evidence at a murder trial that the victim and the defendant were seen
    walking together shortly before the murder, that the defendant had
    a concealed gun, and that some of the defendant's clothing and his
    wallet were found in the room where the victim's body was discov-
    ered shortly after her death was sufficient for submission of the case
    to the jury.    [200-201]
At a murder trial, hearsay testimony that in response to the statement,
    "You have a gun," the defendant replied, "So what if I do," was
    properly allowed as an admission.    [201-202]
At a murder trial prior to this court's decision in *Commonwealth* v.
    *Stewart,* 365 Mass. 99 (1974), the judge did not abuse his discretion
    in denying the defendant's pre-trial general motion for access to the
    grand jury minutes.    [202]
At a murder trial, the prosecutor's statement in his closing argument
    that he was firmly convinced of the defendant's guilt, to which the
    defendant did not object, did not in the circumstances require re-
    versal of the defendant's conviction of murder in the second degree.
    [203-204] HENNESSEY, C.J., concurring.

INDICTMENT found and returned in the Superior Court
on April 14, 1971.

The case was tried before *Frank E. Smith,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*Margaret D. McGaughey* for the defendant.

*George E. Foote, Jr.,* Special Assistant District Attor-
ney, for the Commonwealth.

WILKINS, J.    The defendant appeals from his conviction
of murder in the second degree. The body of the victim,
who was a prostitute, was found on February 7, 1971, in

a third floor room of a building at 413 Massachusetts Avenue in Boston. The defendant challenges (1) the denial of his motion for a directed verdict, (2) the admission in evidence of a brief exchange of words he had with a male prostitute, (3) the denial of access to the grand jury minutes, and (4) the propriety of a portion of the prosecutor's closing argument to the jury. Facts relating to each contention will be set forth as it is considered. The defendant also asks us to exercise our authority and duty under G. L. c. 278, § 33E, and grant him a new trial or direct the entry of a verdict of guilty of a lesser offense than murder in the second degree. There was no reversible error; we see no basis to modify the jury verdict under § 33E; and we affirm the judgment.

1. The motion for a directed verdict was properly denied. Although there were no eyewitnesses to the crime, and the murder weapon was never found, there was circumstantial evidence which warranted the jury's verdict.

Accepting the evidence in the light most favorable to the Commonwealth, as we must (*Commonwealth* v. *Kelley*, 370 Mass. 147, 150 [1976]), the jury could have found the following facts. The victim was killed by a gunshot wound to the side of her head, which may have been caused by a shotgun and probably not by a handgun. Various objects were found in the room, some of which were attributed to the defendant and some of which were not. Those attributable to the defendant were a "leopard skin" dashiki, a pair of heavy boots, and a black wallet which contained a miniature license plate marked "Massachusetts — Curt."

About 4:30 A.M. on February 7, the defendant, wearing a three-quarter length coat, the dashiki and heavy boots, among other things, approached a group of prostitutes in the vicinity of Massachusetts and Columbus avenues. The defendant was known to some of the group whose professional services he had used in the recent past. He propositioned one of them and was rebuffed. There was evidence, whose admissibility we discuss next and uphold, that the defendant had a concealed gun. The group of prostitutes, seeing the police approaching, retired to an all night res-

taurant. The defendant followed. He propositioned another of the group, showing her his wallet containing money, in which she also saw the miniature license plate containing the word "Curt." When she refused to "go out with" him, as the witnesses tended to put it euphemistically, the defendant turned his attention to the victim, who agreed to accompany him. The victim and the defendant were last seen walking up the street toward 413 Massachusetts Avenue.

There was medical evidence that the victim died approximately between 4:30 A.M. and 9:30 A.M. The body was found before noon by a Boston policeman who was engaged in preparing a street listing of the occupants of 413 Massachusetts Avenue.

In this state of the evidence, we think it a reasonable inference for the jury to conclude that the defendant shot the victim and fled in great haste, leaving his dashiki, his boots, and his wallet behind. The defendant in the normal course of engaging the victim's services would have been unlikely to leave without his wallet or, especially on a winter's night, to depart without his dashiki and his boots. The fact that the defendant was the last person seen with the victim heading toward 413 Massachusetts Avenue is itself probative of the defendant's guilt. The inference that the defendant killed the victim was reasonable and possible, even if it was not compelled in the circumstances. *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 54-56 (1975).

2. The defendant challenges the admission of testimony of a brief exchange of words between him and a transvestite named Carole, who did not testify at the trial. One of the prostitutes testified that in the early morning of February 7, 1971, Carole approached the defendant on the street near 413 Massachusetts Avenue, and grabbed him by the waist. The defendant then slapped Carole, who jumped back, and said, "You have a gun." The witness testified that the defendant then replied, "So what if I do."

The exchange between Carole and the defendant was properly admitted. Standing alone, of course, Carole's statement was inadmissible hearsay. If the defendant had

said nothing, it is doubtful that his silence would have qualified as an implied admission. See *Commonwealth* v. *Wallace*, 346 Mass. 9, 14-15 (1963); *Commonwealth* v. *Boris*, 317 Mass. 309, 317-318 (1944). However, the defendant did not remain silent. He said, "So what if I do," meaning "So what if I do have a gun." That statement reasonably could have been inferred to be an admission that he had a gun. Even if it were equivocal, the statement was admissible. See *Commonwealth* v. *Valliere*, 366 Mass. 479, 488-489 (1974); *Commonwealth* v. *McGrath*, 351 Mass. 534, 538 (1967); W.B. Leach & P.J. Liacos, Massachusetts Evidence 203 (4th ed. 1967). There was evidence that the defendant could hear and understand what Carole said, and whether he had a gun was certainly within his knowledge. The judge charged the jury that it was for them to say whether by that statement the defendant admitted he had a gun.

The defendant does not challenge the admissibility of evidence that he had a gun shortly before the shooting. The fact that Carole did not testify presents no question of the absence of confrontation of Carole as a witness because it is the defendant's own statement which establishes the admissibility of the exchange between them. *Commonwealth* v. *McGrath, supra* at 539.

3. The defendant objects to the judge's denial of his motion for access to grand jury minutes. The motion was presented before trial and was not renewed at any time during trial. The judge was not asked to review the minutes in camera, and no demonstration of particularized need for the minutes was made. We do not know which witnesses may have appeared before the grand jury, nor do we have any showing that the testimony of any witness before the grand jury was inconsistent with his or her trial testimony. This case was tried before our opinion in *Commonwealth* v. *Stewart*, 365 Mass. 99, 105-106 (1974), changing prospectively the usual practice concerning the furnishing of grand jury minutes. There is no showing of any abuse of discretion in the denial of the defendant's general motion for access to the grand jury minutes.

4. We consider next the defendant's challenge to an inappropriate statement made by the prosecutor in the concluding portion of his closing argument to the jury. After reviewing the evidence, the prosecutor acknowledged that the Commonwealth had the burden of proving every element of the crime. He then said, "I am firmly convinced in my mind, and I am not a juror, that this defendant is guilty of the crime [with which] he is charged." The balance of his closing argument is set forth in the margin.[1] The defendant did not object to the now challenged statement of the prosecutor. He did not request a specific instruction to the jury concerning the prosecutor's argument. The judge did instruct the jury that their verdict had to be based on facts which they found proved to exist beyond a reasonable doubt.

An assignment of error not based on an exception brings nothing before us. *Commonwealth* v. *Underwood*, 358 Mass. 506, 509 (1970). Here, the absence of an objection is particularly significant because the judge was not given an explicit opportunity to undertake to correct the error. There is no question that the prosecutor's expression of personal belief in the defendant's guilt was improper. See *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 537-538 (1971). In context, however, the prosecutor does not ap-

---

[1] "I am firmly convinced that, and of course you will say that I have somewhat of a partiality towards the Commonwealth, but what is the Commonwealth, ladies and gentlemen of the jury? It's you and me and this defendant, and these witnesses here. It's everyone collectively, working together, trying to have a better society under law. If you work within the framework of that law, if you take your law from the Judge, if you apply the facts that you find, if you speak the truth, which is verdict, veritas, speak the truth, if you do, ladies and gentlemen, I have an abiding conviction that when you walk away from the jury room and you find this defendant guilty, you will have acted with every forceful and good intention that any juror that ever sat in a case in this Commonwealth will have.

"I will be satisfied with your verdict, without reservation. This is our system. You win some, you lose some. I don't want to win a case at the expense of anyone. I think that I have proven this case by the use of witnesses, both testimonial and exhibits. I think I have proven this case beyond what his Honor will call, or will describe to you as a reasonable doubt.

"I thank you again."

pear to be arguing that he has any knowledge of facts not in evidence. His statement — "and I am not a juror" — tends to mitigate the otherwise adverse effect of his statement. He acknowledged that the jury must decide the case on the evidence. On balance, we do not view his comment, taken in the context of his entire argument and the judge's charge, as justifying reversal of the conviction on the ground of a miscarriage of justice. See *Commonwealth* v. *Nordstrom*, 364 Mass. 310, 313-316 (1973).

5. As we have stated at the commencement of this opinion, we see no occasion to change the verdict under G. L. c. 278, § 33E. The inference of the defendant's guilt might not have been warranted if the jury had taken a different view of the evidence. There were substantial credibility questions for the jury to resolve concerning the defendant's identity. Also, if the murder weapon was a shotgun and not a handgun, as the evidence suggested, the jury had to deal with the evidence that the defendant had a concealed gun and perhaps determine whether that weapon could have been a shotgun. Our role under § 33E, however, is not to sit as a second jury to pass anew on the question of the defendant's guilt. See *Commonwealth* v. *Smith*, 357 Mass. 168, 181 (1970); *Commonwealth* v. *Gricus*, 317 Mass. 403, 407 (1944). Considering the case broadly on the law and the facts to determine whether there was any miscarriage of justice, we conclude that the judgment should stand. Certainly, there was no evidence to warrant a finding of the defendant's guilt of any lesser crime than murder in the second degree.

*Judgment affirmed.*

HENNESSEY, C.J. (concurring). I agree that the judgment should be affirmed, but I believe that it is time, and past time, for some plain speaking on the subject of overreaching closing arguments by prosecutors. In the instant case this court concludes — and I concur — that the Commonwealth's impermissible argument was not so egregious as to be incurable by the corrective instructions of the

judge. However, this case is just one of a rash of similar instances in recent years where the trial judges, and later the Appeals Court or this court, have had to engage in an inquiry as to whether clear prejudice to the defendant has been offset by curative instructions. In stating that prosecutors have a duty to avoid such arguments, I have no intention of intruding on the prosecutors' privilege and duty to argue the public's case aggressively and resourcefully. However, this duty does not confer a license for impermissible argument.

The scope of proper argument is simply stated. Counsel may argue as to the evidence and the fair inferences from the evidence. *Leone* v. *Doran*, 363 Mass. 1, 18 (1973). Trial counsel are or should be familiar with the specifics of "fair" argument within the rule, as set out in many cases, some of them of constitutional dimension.

That prosecutors are frequently not familiar with the boundaries of argument, or choose to ignore them, is shown by the list of cases set out in the margin, as culled from the reports of just the past two years.[1] In some cases we

---

[1] *Commonwealth* v. *Gouveia,* 371 Mass. 566, 570-572 (1976) (new trial denied despite repeated allusions by implication to the defendant's failure to testify). *Commonwealth* v. *DeChristoforo,* 371 Mass. 26, 38 (1976) (new trial denied despite expressions of personal belief in the defendant's guilt and in defense awareness of such guilt). *Commonwealth* v. *Burnett,* 371 Mass. 13, 18-19 (1976) (new trial denied despite expression of personal belief in guilt and sympathy for victim). *Commonwealth* v. *Borodine,* 371 Mass. 1, 9-12 (1976) (new trial denied despite comments on the defendant's failure to testify, lack of remorse and knowledge of own guilt). *Commonwealth* v. *Killelea,* 370 Mass. 638, 644-649 (1976) (new trial granted because of repeated erroneous assertions that a verdict of not guilty by reason of insanity would set the defendant free). *Commonwealth* v. *Redmond,* 370 Mass. 591, 594-597 (1976) (new trial granted because of speculation, without evidentiary support, that the defendant had tried to rape victim before murder). *Commonwealth* v. *MacDonald (No. 1),* 368 Mass. 395, 400-401 (1975) (new trial denied despite comments that defense testimony was perjured and despite derogatory comments on the characters of the defendant and the defense witnesses). *Commonwealth* v. *Graziano,* 368 Mass. 325, 331-332 (1975) (new trial granted because of appeals to ethnic prejudice). *Commonwealth* v. *Ramey,* 368 Mass. 109, 111-113 (1975) (new trial denied despite comments on missing evidence). *Commonwealth* v. *Gilday,* 367 Mass. 474, 496-497 (1975) (new trial denied despite reference to the defendant as an "old pro"). *Commonwealth* v.

have reversed and ordered new trials; in more cases we have determined that the prejudice was not shown or that sufficient remedy was achieved by curative instruction by the judge.

Prejudicial excesses in argument offered on behalf of the Commonwealth constitute *prosecutorial error*, not judicial error. After days or weeks of trial the trial judge is placed in a dilemma. A mistrial may be declared only at great public expense. The judge's usual recourse is to curative instructions; the appellate court may or may not agree with his decision.

The risks of prejudice to the defendant's right to a fair trial, and the public's interest in avoiding unnecessary retrials, may easily be avoided in most instances. Preliminary thought by counsel must be devoted to the argument. Totally extemporaneous argument may more readily bring about the error. Spontaneity is required in some measure to meet the defendant's argument, it is true. This court has given modest recognition to the "fight fire with fire" concept. See *Commonwealth* v. *Burnett*, 371 Mass. 13, 19 (1976). Here, also, the better course, when defense counsel has overstepped in argument, is to seek redress from the judge rather than to reply in kind by overstepping in rebuttal.

Finally, I have no wish to inhibit the prosecution with an unnecessarily cautious approach. The public is entitled to have the most effective argument advanced that can fairly be made. I suggest that the prosecutor can make just such an argument, and at the same time minimize the risk of error, by requesting a preliminary discussion with the judge out of the jury's hearing as to the propriety of the prosecutor's intended remarks.

I do not mean to suggest that defense counsel do not also at times offer invalid argument. Nevertheless, the nature of our process is such that review and reversal can fol-

---

*Coleman,* 366 Mass. 705, 713-715 (1975) (new trial denied despite prosecutorial assertion that killing was intentional). *Commonwealth* v. *Barras,* 3 Mass. App. Ct. 43, 49-50 (1975) (new trial denied despite derogatory descriptions of the defendant's character).

low only the error of the prosecutor. This is not to say that the defense lawyer should not look with care on his duty to the court, as well as to his client, in preparing his argument. Preliminary discussion with the judge may also be indicated. The defendant's cause with a jury is, to say the least, probably not assisted when the judge finds it necessary within the hearing of the jury to label a defense argument as impermissible.

In recent years the same types of "prosecutorial errors" are offered in case after case. It is my thought that this court should in the future stand more ready to reverse the judgments in such cases, particularly when it appears that the simple precautions suggested herein have not been invoked.