COMMONWEALTH vs. GEORGE BUCAULIS.[1]

Suffolk.   January 9, 1978. — February 24, 1978.

Present: HALE, C.J., KEVILLE, & BROWN, JJ.

*Prostitution,* Maintaining premises for. *Due Process of Law,* Vagueness of statute. *Practice, Criminal,* Instructions to jury. *Evidence,* Form of question. *Witness,* Corroboration. *Words,* "Sexual intercourse."

At the trial of a complaint charging the defendant with knowingly having suffered the presence of certain females for the purpose of unlawfully having sexual intercourse in premises under his control the evidence was sufficient to warrant the jury in finding that an employee of the lounge managed by the defendant was available for sexual intercourse with customers and that the defendant was aware of and acquiesced in his employee's illicit sexual activities. [61-64]

Testimony of two police officers at the trial of a complaint charging the defendant with violating G. L. c. 272, § 6, that they saw a customer of the lounge managed by the defendant and a female employee, clad in a white negligee, emerging within seconds of each other from a back room in the lounge, where the police found a bottle of champagne and two glasses in a booth, served to corroborate for purposes of c. 272, § 11, the testimony of the customer as to what had transpired between the employee and himself. [64]

General Laws c. 272, § 6, was not unconstitutionally vague as applied to the manager of an establishment serving alcoholic liquors to the public who permitted employees to perform sexual acts for hire. [65]

The manager of an establishment serving alcoholic liquors to the public who was charged with permitting employees to perform sexual acts for hire on the premises in violation of G. L. c. 272, § 6, could

[1] We adopt the spelling of the defendant's surname which appears in the criminal complaint, while noting that in the pleadings and memoranda submitted by the defendant's attorney the name is spelled "Bucuvalas" and that elsewhere in the record the name also appears as "Bucaualis."

not raise as a defense those privacy rights which might be recognized with regard to sexual conduct between consenting adults in private. [66]

There was no merit to the contention of a defendant charged with violating G. L. c. 272, § 6, that construction of the statutory term "sexual intercourse" to include the act of fellatio deprived him of due process of law. [66]

At the trial of a complaint charging violations of G. L. c. 272, § 6, the judge did not err in refusing to instruct the jury in the exact language requested by the defendant or in failing to give instructions which were either at odds with the law of the Commonwealth or unsupported by the evidence. [66-67]

At the trial of a complaint charging the manager of a lounge with permitting employees to perform sexual acts for hire, the judge did not abuse his discretion in permitting the prosecutor to ask a police officer whether he was familiar with the operation of the lounge where the judge limited the scope of the question and gave close scrutiny to the subsequent testimony of the witness. [67-68]

COMPLAINT received and sworn to in the Municipal Court of the City of Boston on October 15, 1976.

On appeal to the Superior Court the case was tried before *Lappin*, J.

*Kenneth H. Tatarian (Morris M. Goldings* with him) for the defendant.

*Timothy P. O'Neill*, Assistant District Attorney, for the Commonwealth.

HALE, C.J. The defendant was convicted in a District Court on a complaint charging him with knowingly having suffered the presence of certain females for the purpose of unlawfully having sexual intercourse in premises under his control in violation of G. L. c. 272, § 6. Upon claiming an appeal the defendant was again tried along with one Connie Peria before a jury in the Superior Court.[2] He was again found guilty of violating G. L. c. 272, § 6, and now appeals, arguing several assignments of error.

_____

[2] Peria was charged with and found guilty of the offense of prostitution. She has not appealed.

1. We address first the defendant's claim that the judge erred in denying his motions for a directed verdict of not guilty and his motion to set aside the verdict of guilty in that the Commonwealth had failed to present sufficient evidence from which the jury could have concluded that the defendant was guilty of the offense charged. This contention leads us to inquire whether the evidence, read in the light most favorable to the Commonwealth, was sufficient to warrant a finding of guilty. *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 786 (1975).

There was evidence admitted against the defendant from which the jury could have found the following facts. The defendant was the president and a director of the United Food Corporation, which does business as the Two O'Clock Lounge in the "Combat Zone" of Boston. The defendant also served as manager and principal representative of the lounge with full authority to control the premises described in the liquor license. As manager, the defendant was usually present and in charge of the lounge during business hours. He was present in the lounge during the events at issue in this case.

The defendant's managerial responsibilities included arranging for entertainment and keeping track of all the "girls" who were employed by the lounge. The primary form of entertainment in the lounge was provided by female performers who stripped and danced in the nude. When those entertainers were not performing, they mingled with the customers and attempted to convince them to purchase bottles of champagne at prices ranging from $6.25 to $150. Peria was employed by the lounge as such a performer at a salary of $100 a week.

In the late afternoon of October 14, 1976, a male customer, one Wolfe, spoke with a barmaid in the main room of the lounge. As the result of that conversation the barmaid summoned Peria, who appeared wearing a white negligee. Wolfe then had a conversation with Peria and the barmaid, as the result of which Wolfe paid Peria $50. She in turn gave the money to the barmaid. Peria then

led Wolfe into a room in the back of the lounge. That
room was darkened and otherwise unoccupied, as the bar
located therein was not usually in operation during the
afternoon. In a booth in that room Peria performed an act
of fellatio on Wolfe. A champagne bottle and two glasses
were later found in the booth. The bottle was partially
empty, and there was champagne in each of the glasses.

At about 4:00 P.M. two police officers attached to the
vice control unit of the Boston police department entered
the lounge and were met by the defendant. The three
proceeded to the rear of the premises and were engaged
in conversation when Peria, clad in a white negligee,
came running from the back room. About ten to fifteen
seconds later Wolfe emerged from the same room. Wolfe
immediately addressed the officers and the defendant,
claiming that after the completion of the act of fellatio he
had discovered his wallet was missing and that it had
been stolen.[3]

As a result of the information gathered by the officers
in this conversation, criminal complaints issued against
Peria and the defendant.

The offense defined by G. L. c. 272, §6,[4] may be analyzed
as requiring the proof of three elements: (1) that the de-
fendant owned, managed or assisted in the management
or control of certain premises; (2) that a female was pre-
sent on those premises for the purpose of unlawfully hav-
ing sexual intercourse; and (3) that the defendant in-
duced or knowingly suffered the female's presence on the
premises for that purpose. We consider the evidence in-
troduced by the Commonwealth in this case to be suffi-
cient to support the jury's finding that the defendant was

---

[3] Wolfe testified that he found the wallet in his pocket when he
arrived at his home.

[4] General Laws c. 272, § 6, reads as follows: "Whoever, being the
owner of a place or having or assisting in the management or control
thereof, induces or knowingly suffers a female to resort to or be in or
upon such place, for the purpose of unlawfully having sexual inter-
course, shall be punished as provided in section three."

guilty of the alleged offense. See *Commonwealth* v. *Martin,* 304 Mass. 320, 322 (1939).

The defendant does not seriously contend that the Commonwealth failed to present sufficient evidence as to the first element of the offense. There was ample evidence of the defendant's management and responsibility for the lounge premises. The defendant does, however, challenge the sufficiency of the evidence on the second element. He argues that the Commonwealth proved only that Peria was employed by the lounge as an entertainer and that at most the evidence indicates Peria's willingness to engage in sexual activity rather than her "purpose" to be so engaged. We do not agree. Peria's employment as an entertainer in the lounge does not rule out the inference that her duties also included the performance of sexual services. Given the type of establishment, Peria's occupation and costume, and her response to the barmaid's call and subsequent performance of fellatio for payment, it was open for the jury to determine as a matter of fact that Peria was available for sexual intercourse with customers who desired such service.

The defendant also challenges the sufficiency of the evidence introduced by the Commonwealth with regard to the third element of the offense. He cites the case of *Commonwealth* v. *Altenhaus,* 317 Mass. 270, 273 (1944), for the proposition that the proof of knowledge required to support a verdict of guilty in certain criminal offenses is not made out when the facts proven are as consistent with an innocent explanation as with a guilty one. The defendant claims that as there was no evidence that he either participated in or was aware of the transaction between Peria, Wolfe and the barmaid, the Commonwealth's evidence could fairly be characterized as establishing both his ignorance of the transaction and his innocence of the offense.

We regard the *Altenhaus* case as distinguishable on its facts. The evidence in the present case indicates a transaction for sexual services performed on licensed prem-

ises, which was undertaken openly at the main bar of the lounge during regular business hours by two employees normally under the direct supervision of the defendant. In view of the apparent openness of this transaction the jury could reasonably infer that the fifty dollars paid to the barmaid was payment for more than champagne and that the lounge made a profit on the sexual aspects of the transaction. Given these and all the other circumstances in the case, the jury could reasonably conclude that the defendant, as manager of the lounge, was aware of and acquiesced in his employee's illicit sexual activities.

2. The defendant also contends that his motions for a directed verdict of not guilty and his motion to set aside the verdict of guilty should have been allowed on the ground that the Commonwealth had failed to satisfy the requirement under G. L. c. 272, § 11, that "[a] person shall not be convicted under sections two to six [of chapter 272], inclusive, upon the evidence of one witness only, unless his testimony is corroborated in a material particular." We do not agree that the quoted provision had any application in the circumstances of this case.

The testimony of two police officers regarding their observations of Peria's and Wolfe's emergence, within seconds of each other, from the back room of the lounge and the officers' discovery of a bottle of champagne and two glasses in a booth in the back room served to corroborate Wolfe's testimony as to what transpired between Peria and himself. This in turn constituted sufficient corroboration of a "material particular" of Wolfe's testimony for the purposes of G. L. c. 272, § 11. Cf. *Commonwealth* v. *Taschetta*, 252 Mass. 158, 160 (1925) (testimony by defense witnesses that defendant had taken a woman to a house in Springfield and that she had subsequently left with him, found sufficient in relation to G. L. c. 272, § 11, to corroborate woman's testimony of defendant's conduct while in the house in prosecution for violation of G. L. c. 272, § 2). There was no error in the denial of the motions.

3. The defendant argues next that G. L. c. 272, § 6, the statute under which he was charged, is impermissibly vague in violation of both the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. He claims that the standard defined under the statutory prohibition of a "purpose of unlawfully having sexual intercourse" is so ambiguous as to preclude fair notice or warning to potential offenders of the type of conduct which is proscribed. In addition to this alleged facial invalidity, the defendant contends that the statute is impermissibly vague as applied to the circumstances of this case. He claims that in light of recent rulings that certain penal statutes do not reach sexual conduct which occurs between consenting adults in private, see e.g. *Commonwealth* v. *Balthazar*, 366 Mass. 298, 302 (1974), habeas corpus granted sub nom. *Balthazar* v. *Superior Court*, 428 F. Supp. 425 (D. Mass. 1977), he could not have been on notice that it was "unlawful" for Peria to engage in sexual activity with Wolfe in a darkened and otherwise unoccupied room. The defendant argues finally that the term "sexual intercourse," as employed in the statute, is commonly understood as describing only the act of coition; and the present construction of that term as including the act of fellatio, which is necessary to support the defendant's conviction in this case, was unforeseeable and is therefore in violation of his due process rights. See *Bouie* v. *Columbia*, 378 U.S. 347, 352 (1964).

As there are no First Amendment issues involved in the defendant's challenge to the statute, we examine his claim of statutory vagueness solely in relation to the facts of the case at hand. *United States* v. *Mazurie*, 419 U.S. 544, 550 (1975). *Commonwealth* v. *Gallant*, 373 Mass. 577, 581 (1977). Having done so, we conclude that the standard set by G. L. c. 272, § 6, is sufficiently comprehensible for the defendant to have been on notice of the unlawfulness of his conduct in this case. See *Coates* v. *Cincinnati*, 402 U.S. 611, 614 (1971); *Commonwealth* v. *Jarrett*, 359 Mass. 491, 496–497 (1971).

By performing sexual acts for hire Peria committed the offense of prostitution.[5] Sexual conduct of that nature is manifestly unlawful. *Commonwealth* v. *King*, 374 Mass. 5, 11-12 (1977). Those privacy rights which might be recognized with regard to certain sexual conduct engaged in between consenting adults in private cannot be raised in defense of the commission of prostitution on premises to which the public has access. *Id.* at 14. The conduct of the defendant and his employees falls squarely within the "hard core" of the statute's prohibitions. He cannot complain of the potential constitutional dubiety of G. L. c. 272, § 6, when applied to certain borderline situations. *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977).

Moreover, the defendant's contention that his due process rights were violated by the construction of the statutory term "sexual intercourse" to include the act of fellatio is also without merit. The meaning of the language of a statute may be measured by common understanding and practice. *Commonwealth* v. *Jarrett, supra* at 497. *Commonwealth* v. *Balthazar*, 366 Mass. at 300. The term "sexual intercourse" has commonly been employed to describe a variety of sexual conduct, including the act of fellatio. See G. L. c. 265, §§ 22, 23; *Commonwealth* v. *Gallant, supra* at 584 (defining "natural" and "unnatural" intercourse under G. L. c. 265, § 23). There is nothing before us which indicates that the act of fellatio was previously considered to be outside the scope of the statute. See *Rose* v. *Locke*, 423 U.S. 48, 53 (1975). We accordingly conclude that the defendant should have understood that his conduct was in violation of the statute. See *Colten* v. *Kentucky*, 407 U.S. 104, 110 (1972); *Commonwealth* v. *Klein*, 372 Mass. 823, 833 (1977) (dictum).

4. The defendant next assigns as error several portions of the judge's instructions to the jury, particularly with regard to the judge's refusal to charge in accordance with certain requests for instructions. After having reviewed

---

[5] See footnote 2, *supra.*

the charge as a whole, *Commonwealth* v. *Pinnick*, 354 Mass. 13, 15 (1968), we conclude that the judge's instructions to the jury were both fair and complete. As certain of the defendant's requests for instructions on the definition of the words "unlawful sexual intercourse" were either at odds with the law of the Commonwealth or unsupported by the evidence in the case, the judge was correct in declining to give them. *Commonwealth* v. *Kleciak*, 350 Mass. 679, 691–692 (1966). The remaining requests for instructions were substantially covered in the judge's charge. The judge was not bound to instruct the jury in the exact language suggested by the defendant. *Commonwealth* v. *Aronson*, 330 Mass. 453, 458 (1953). *Commonwealth* v. *Edmonds*, 365 Mass. 496, 506 (1974).

5. The defendant objects last to the judge's ruling which permitted one of the police witnesses to respond in direct examination to the assistant district attorney's query: "Are you familiar with the method of operation of the Two O'Clock Lounge?" The judge overruled the defendant's objection to the question and denied the defendant's request that the Commonwealth be required to make an offer of proof.[6] The defendant now claims that, by allowing the witness to respond to so broad a question, the judge made it possible for the witness to interject prejudicial and otherwise incompetent evidence before the jury.

Decisions as to the form and relevancy of questions in the examination of witnesses are within the discretion of the trial judge. *Commonwealth* v. *Slaney*, 345 Mass. 135, 142 (1962). *Commonwealth* v. *Barras*, 3 Mass. App. Ct. 43, 47 (1975). In view of the judge's limitation of the scope of the question[7] and his close scrutiny of the subsequent

---

[6] The defendant excepted only to the judge's denial of the request for an offer of proof.

[7] In response to the defendant's objections to the question the judge stated, "He [the witness] may testify as to his observations as to how it is run, what takes place there, whether there are shows there, whether there is entertainment, whether there are B-girls, all of which if he knows he may testify." The witness had previously testi-

testimony by the witness, we perceive no abuse of discretion; nor was there prejudice to the substantial rights of the defendant resulting from the allowance of the assistant district attorney's question in that form. See *Commonwealth* v. *Greenberg*, 339 Mass. 557, 580–581 (1959), and cases cited.

*Judgment affirmed.*

---

fied that he had been in the lounge "hundreds of times" pursuant to his duties as a vice control officer.