UNITED FOOD CORPORATION *vs.* ALCOHOLIC BEVERAGES
CONTROL COMMISSION
(and a companion case[1]).

Suffolk. March 8, 1978. — May 15, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Boston Licensing Board. Alcoholic Beverages Control Commission. State Administrative Procedure Act. Quasi Judicial Tribunal.*

The Boston Licensing Board is part of the executive department of the Commonwealth, and there is, therefore, no requirement that the appointment of its members be approved by the Executive Council. [242]

The Boston Licensing Board is not an agency within the meaning of G. L. c. 30A, and, therefore, is not required to adopt regulations pursuant to c. 30A, § 9. [242-243]

Upon appeal to the Alcoholic Beverages Control Commission from an order of the Boston Licensing Board revoking an establishment's all-alcoholic license, the commission properly received in evidence the transcript of the hearing before the board even though the board was not bound by the procedural requirements of the State Administrative Procedure Act. [243]

A decision of the Alcoholic Beverages Control Commission to revoke an establishment's all-alcoholic license, which was based on a transcript of a hearing before the Boston Licensing Board supplemented by additional evidence, was supported by substantial evidence. [244]

Although one of the three unlawful acts relied on by the Alcoholic Beverages Control Commission in ordering the revocation of an establishment's all-alcoholic license was based on a statute subsequently held to be unconstitutional, a remand to the commission was not required where the remaining more serious violations supported the revocation and there was no real doubt that the commission upon a remand would again order revocation. [245]

CIVIL ACTION commenced in the Superior Court on September 6, 1977.

The case was heard by *Nelson,* J.

---

[1] For explanation, see text and n.2 below.

CIVIL ACTION commenced in the Appeals Court on September 12, 1977.

The case was heard by *Brown*, J.

The Supreme Judicial Court, on its own intiative, ordered direct appellate review.

*Morris M. Goldings* for the plaintiff.

*Timothy P. O'Neill*, Special Assistant Attorney General, for the defendant.

KAPLAN, J. We review a judgment of the Superior Court which upheld an order of the Alcoholic Beverages Control Commission (ABCC), which in turn upheld an order of the Boston Licensing Board (BLB) revoking, because of acts of illegality on the premises, the common victualler's all-alcoholic license of the appellant United Food Corporation, doing business as the Two O'Clock Lounge, an establishment in the "combat zone" in Boston. An order of the ABCC suspending the appellant's license for ninety days was also appealed from, and upheld by the Superior Court, but that order has been carried out and need not be dealt with by us.[2]

General Laws c. 138, § 64, as amended through St. 1964, c. 64, reads in part: "The licensing authorities after notice to the licensee and reasonable opportunity for him to be heard by them, may modify, suspend, revoke or cancel his license upon satisfactory proof that he has violated or permitted a violation of any condition thereof, or any law of the commonwealth." In February, 1977, the BLB, as local licensing authority, held a hearing upon adequate written notice to consider alleged occurrences at the lounge which

---

[2] The BLB's order of revocation was automatically stayed pending the appeal to the ABCC (see G. L. c. 138, § 12, second paragraph). A judge of the Appeals Court stayed, pending appeal, the judgment of the Superior Court sustaining that order. The stay has remained in force. Besides the appeals from Superior Court judgments sustaining the revocation and suspension orders of the ABCC, we have an appeal from the denial by a judge of the Appeals Court of a stay of the judgment sustaining the suspension order, but that, like the judgment itself, has been mooted by the carrying out of the suspension. We took the two judgments of the Superior Court for direct review. (See also note 4 *infra*.)

constitute violations of law and breaches of license conditions. The BLB received twelve police reports detailing such episodes in the year 1976, and also heard confirming testimony by police officers. The appellant cross-examined, but introduced no evidence on its own behalf. The BLB ordered revocation of the appellant's license, choosing to rely for its grounds on two acts of prostitution on the premises (see G. L. c. 272, § 53) and an act of "open and gross lewdness" thereon, committed with the knowledge and consent of the appellant, all as related in three of the police reports.[3]

The appellant took an appeal from the decision of the local authority to the ABCC pursuant to G. L. c. 138, § 67, which affords a fresh hearing that is required by the State Administrative Procedure Act (APA), G. L. c. 30A, §§ 10-13, to conform to the standards described therein for adjudicatory proceedings. The record made before the BLB was introduced at the ABCC hearing and other evidence was received. The appellant called no witnesses. The incidents appeared without serious challenge to have been as follows.

(i) On October 14, 1976, a police officer entered the lounge and encountered one Wolfe. Wolfe said the bartender had asked him that afternoon whether he wanted a girl. A woman was then brought to him. She said she would perform fellatio on him if he bought a bottle of champagne for $50. Wolfe agreed and they went to a booth in a back room of the lounge, where the act was performed. The officer testified that the woman and the manager of the lounge, one Bucuvalas, were present when Wolfe told his story; neither attempted any denial.

---

[3] The ABCC does not have jurisdiction over common victuallers' or entertainment licenses issued by the BLB. The BLB revoked the appellant's entertainment license along with the others. It had issued the all-alcoholic and victualler's licenses as a single document, and revocation of the all-alcoholic license (later confirmed by the ABCC) carried with it revocation of the associated victuallers' license. See G. L. c. 138, § 12; c. 140, §§ 2, 9, 183A.

By agreement a transcript was introduced of portions of Wolfe's testimony about the event as given at the related trial of Bucuvalas and the woman on charges, respectively, of suffering the presence of females for purposes of unlawful sexual intercourse (G. L. c. 272, § 6) and prostitution. See *Commonwealth* v. *Bucaulis*, 6 Mass. App. Ct.    (1978).[a4] These excerpts included cross-examination of Wolfe. Also admitted at the ABCC hearing was a deposition of Wolfe taken by the appellant's present attorney.

(ii) On November 11, 1976, the officer on entering the lounge heard a woman yell, "Get out, the cops are coming." Racing the floor manager to the rear of the bar, the officer arrived in time to see a naked woman leave a booth; in it the officer found a bottle of champagne with two glasses, a woman's shoes and underwear, and a naked man. The man told the officer that the woman had solicited him and performed fellatio on him in the booth for $150. Bucuvalas, two other managers of the lounge, and the woman were present during the man's account and made no denial; in fact the woman admitted the clothing was hers and that she was employed by the lounge.

(iii) Dating from January 2, 1976, was an incident in which customers, without cavil by the management, were grabbing a dancer in her genital area, a course of conduct characterized by the licensing authorities as "open and gross lewdness."

On the record thus made, the ABCC agreed with the BLB that the license should be revoked under the cited statute, c. 138, § 64.

Promptly following the revocation hearing, the ABCC conducted an original proceeding to consider an "immediate sanction" against the appellant to take effect while the revocation order might be under review (see note 2 *supra*). The commission heard evidence of instances of solicitation

[a] 373 N.E.2d 221 (1978).

[4] In the cited case the conviction of the manager was affirmed; the woman's conviction was not appealed. Further appellate review was denied, 374 Mass. 835 (1978).

and prostitution at the lounge in January and February, 1977, and on that basis entered the order suspending the appellant's license.[5]

Applying § 14 of the APA regarding judicial review of an agency action, a judge of the Superior Court examined carefully a variety of claimed errors, some of which are pressed upon us on the present appeals.

1. The appellant's original brief argued that the BLB was improperly constituted because its members' appointment by the Governor lacked the approval of the Executive Council which is required for gubernatorial appointments to agencies or instrumentalities of a city. Pending the present appeal there was handed down an *Opinion of the Justices*, 374 Mass. 864 (1978), taking the view that the BLB is part of the executive department of the Commonwealth. We adopt the opinion.

2. There is an attack on the procedures used by the BLB, the chief assault being that that board has not issued procedural rules. The APA requires (G. L. c. 30A, § 9, inserted by St. 1954, c. 681, § 1) that "[e]ach agency shall adopt regulations governing the procedures prescribed by this chapter," but we have twice said that the BLB is not an "agency" within the meaning of the act (see c. 30A, § 1 [2]). *Boston Licensing Bd.* v. *Alcoholic Beverages Control Comm'n*, 367 Mass. 788, 796 (1975). *Dixie's Bar, Inc.* v. *Boston Licensing Bd.*, 357 Mass. 699, 702 (1970). These holdings are in no way disturbed by the *Opinion of the Justices, supra*. In *Dixie's Bar*, indeed, we assumed that the BLB members were "State officers" (357 Mass. at 702) but thought the BLB nevertheless would not qualify as a Statewide agency of the APA type because its operations were confined to the municipality. *Id.* at 702. The *Opinion* relies on that passage from *Dixie's Bar* in reaching its key conclusion. See 374 Mass. at 868.

---

[5] The suspension order was stayed pending decision by the Superior Court; after that decision, the Appeals Court refused a further stay.

It is enough, then, that the BLB conformed to G. L. c. 138, § 64, which demands that a licensee have notice and a reasonable opportunity to be heard. These the BLB provided. However much we might prefer to see the BLB operating in accordance with rules of procedure publicly announced, their absence does not itself raise here a question of due process, nor do we think it was hurtful to the appellant in the particular case.

3. But there is a supervening point. Were the BLB even an "agency" within the APA, and were there even material questions about the adequacy of the conduct of the BLB proceeding, those questions would wash out if the renewed proceeding on appeal to the ABCC, a veritable "agency," conformed to the act. This is specifically provided by c. 30A, § 10, second paragraph, inserted by St. 1954, c. 681, § 1, quoted in the margin.[6] Cf. *Khachadoorian's Case,* 329 Mass. 625, 627 (1953); *Stuyvesant Ins. Co.* v. *District Director, Immigration & Naturalization Serv., U.S. Dep't of Justice,* 407 F. Supp. 1200, 1206 (N.D. Ill. 1975). So we are led to some contentions of the appellant which can be taken to reach to the ABCC's conduct of the appeal before it.

(a) As the ABCC took in the transcript of the BLB hearing, the appellant says that departures from APA standards at that hearing infected the commission's proceeding. That is quite unproved. There was nothing wrong in receiving the BLB transcript supplemented as it was by other evidence, all open to challenge and contradiction by the appellant armed with a right of subpoena. See *Commissioner of Pub. Safety* v. *Treadway,* 368 Mass. 155, 158 n.3, 159-160 n.6 (1975); *Opinion of the Justices,* 328 Mass. 679, 687 (1952).

---

[6] "When a party to an adjudicatory proceeding has the opportunity by provision of any law or by regulation, to obtain more than one agency hearing on the same question, whether before the same agency or before different agencies, it shall be sufficient if the last hearing available to the party complies with the requirements of this chapter, and the earlier hearings need not so comply."

(b) Whatever argument could be made that the BLB's decision was based exclusively on hearsay and was therefore unsupported by substantial evidence, no such argument can be fairly made with respect to the ABCC's decision. The ABCC had received the Wolfe testimony as recorded in the related criminal trial, as well as his deposition. So also the judge below found that Bucuvalas's silence when Wolfe spoke to the officer served as an admission by the appellant — a conclusion this court recently confirmed in a related case, *Commonwealth* v. *United Food Corp.*, 374 Mass. 765, 772-773 (1978). There is also the testimony of the officer, supporting the second prostitution charge, that he saw the naked man and woman. As there was more than hearsay, we need not undertake to answer here a question that we have thrice reserved, that is, whether after adoption of § 11 (2) of the APA regarding the kind of evidence that may be tendered and relied on in agency proceedings,[7] any vitality is left in *Sinclair* v. *Director of the Div. of Employment Security*, 331 Mass. 101 (1954), which indicated that where an administrative decision must be supported by substantial evidence, hearsay alone would not suffice. *Dwyer* v. *Commissioner of Ins., ante* 227 (1978). *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n*, 372 Mass. 152, 154 (1977). *Western Mass. Bus Lines, Inc.* v. *Department of Pub. Utils.*, 363 Mass. 61, 63 (1973).

(c) The judge of the Superior Court agreed with the appellant that the "open and gross lewdness" incident should not be counted against the appellant after this court's decision in *Revere* v. *Aucella*, 369 Mass. 138, 142-143 (1975), appeal dismissed sub nom. *Charger Invs., Inc.* v. *Corbett*, 429 U.S. 877 (1976), holding the applicable criminal statute (G. L. c. 272, § 16) unconstitutional as unduly vague. The

---

[7] General Laws c. 30A, § 11 (2), inserted by St. 1954, c. 681, § 1, provides in part: "Unless otherwise provided by any law, agencies need not observe the rules of evidence observed by courts, but shall observe the rules of privilege recognized by law. Evidence may be admitted and given probative effect only if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs."

judge's ruling has not been contested by the Commonwealth.

(d) An argument is then made that the case must in all events be remanded to the ABCC for an initial determination by it whether it is disposed to revoke the license on the basis only of the two incidents that remain. The point was considered by the judge below, and we agree with his conclusion that these more serious violations support the revocation, that there is no real doubt that the ABCC upon a remand would again order revocation, and accordingly that remand would be merely a waste of time in a proceeding already protracted. See *NLRB* v. *Wyman-Gordon Co.*, 394 U.S. 759, 766-767 n.6 (1969); *Kurzon* v. *United States Postal Serv.*, 539 F.2d 788, 796 (1st Cir. 1976); *Arnold* v. *Morton*, 529 F.2d 1101, 1105 (9th Cir. 1976). In this view we need not rely on the evidence of continued violations brought forward at the suspension hearing, nor need we discuss the possibility that on remand the ABCC could charge the very episode of January 2, 1976, not as a violation of the "open and gross lewdness" statute, but as a violation of a narrower regulation of the BLB (Entertainment Regulation No. 8C) prohibiting certain physical contacts between entertainers and customers. Cf. *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 1)*, 374 Mass. 547, 551 (1978).[8]

To sum up, the judge of the Superior Court was right in holding under G. L. c. 30A, § 14, that there was no ground for interfering with the ABCC's revocation order. The judgment sustaining that order will be affirmed, and the other matters appealed from will be dismissed as moot.

*So ordered.*

---

[8] This *Aristocratic* case involved the same lounge. The court affirmed (four to one) a six-day suspension of license for violation of a BLB regulation forbidding entertainers to "mingle" with customers.

To round out the record of litigation in this court, see *Commonwealth* v. *United Food Corp.*, 374 Mass. 765 (1978), which upheld in major part a nuisance judgment against the lounge based on acts of prostitution there. See also *Commonwealth* v. *Bucaulis*, 6 Mass. App. Ct.    (1978) (373 N.E.2d 221 [1978]), a prosecution mentioned in the text in the paragraph numbered (i).