BOYLSTON-WASHINGTON, INC. vs. ALCOHOLIC BEVERAGES
CONTROL COMMISSION.

Suffolk.    May 11, 1979. — September 28, 1979.

Present: KEVILLE, PERRETTA, & DREBEN, JJ.

*Alcoholic Beverages Control Commission. Prostitution. Evidence,*
Hearsay. *Administrative Law*, Evidence.

In a proceeding before the Alcoholic Beverages Control Commission,
there was substantial evidence to support the commission's decision
to revoke the license of a café for violating a commission regulation
by allowing the café to be used for immoral purposes in violation of
G. L. c. 272, § 26. [397-400]

BILL IN EQUITY filed in the Superior Court on May 22,
1974.

The suit was heard by *Ford*, J., on a motion for sum-
mary judgment.

*Thomas Miller*, Assistant Attorney General, for the
defendant.

*Leo Sontag* for the plaintiff.

DREBEN, J. The Alcoholic Beverages Control Commis-
sion (commission) revoked the alcoholic beverages license
of Boylston-Washington, Inc. (Boylston-Washington), for
violating the commission's regulation 21 by allowing a
café to be used for immoral purposes in violation of G. L.
c. 272, § 26. Regulation 21 and § 26 appear in the margin.[1]
Boylston-Washington sought judicial review, pursuant to

---

[1] Regulation 21 (4 Code Mass. Regs., Part 2, at 3 [1975]) reads as
follows:

"No licensee for the sale of alcoholic beverages shall permit any
disorder, disturbance or illegality of any kind to take place in or on
the licensed premises. The licensee shall be responsible therefor,
whether present or not."

General Laws c. 272, § 26, as amended by St. 1962, c. 224, reads as

G. L. c. 30A, § 14, of the commission's order and the trial judge entered a judgment for Boylston-Washington setting aside the commission's decision on the ground that it was unsupported by substantial evidence. This is an appeal by the commission from that judgment. We reverse.

The facts of this action are very similar to those in *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Commn. (No. 2)*, 374 Mass. 564 (1978). There was evidence before the commission that on March 7, 1974, a female dancer approached two investigators of the commission who were sitting at the Boylston-Washington bar and asked them to buy her a drink. The dancer ordered one and then a second small bottle of champagne for which the investigators paid the bartender six dollars a bottle. The entertainer suggested that the investigators buy two large bottles of champagne for thirty dollars a bottle and go with her and her girlfriend to booths at the rear of the premises where they could have "a good time." While at the bar, the dancer took one of her breasts out of her dress, exposed it to the investigators, and then placed her hand on the genitals of one of the investigators and then of the second investigator and kept rubbing the latter's leg. She said the investigator would get "anything and everything" for the thirty dollars. When asked what would be in it for her, she answered that a certain per-

follows:

"Whoever, for the purpose of immoral solicitation or immoral bargaining, shall resort to any café, restaurant, tavern, as defined in section one of chapter one hundred and thirty-eight, or other place where food or drink is sold or served to be consumed upon the premises, and whoever shall resort to any such place for the purpose of, in any manner, inducing another person to engage in immoral conduct, and whoever, being in or about any such place, shall engage in any such acts, and any person owning, managing or controlling such place and any employee of such person who induces or knowingly suffers any person to resort to, or be in such place for the purpose of immoral solicitation or immoral bargaining, shall be punished by a fine of not less than twenty-five nor more than five hundred dollars or by imprisonment for not more than one year, or both."

centage of the thirty dollars would be given to her by management as a commission. She also told the investigators that the lights over the booths would be dimmed by the management who would be aware of what was going on. Although the manager denied any knowledge of the dancer's action, the commission found that the solicitation was with the knowledge and permission of the management.[2] We think this conclusion must be upheld.

An agency decision may be set aside only if it is "[u]nsupported by substantial evidence." G. L. c. 30A, § 14(7) (e), as amended by St. 1976, c. 411, §§ 1 and 2. *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Commn.*, 372 Mass. 152, 153 (1977). Judicial inquiry is limited to a determination whether there was before the commission substantial evidence, that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6), as amended through St. 1978, c. 552, § 13. If there was such evidence, the action of the commission must be upheld even though the court would have reached a different result if it were originally in the position of the commission. *Labor Relations Commn.* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971). This is particularly true where questions of credibility are involved. "The commission has had the additional benefit of observing the witnesses before judging their credibility [and] [i]t is not for this court [or the trial court] to substitute its judgment on questions of fact for that of the agency." *Olde Towne, supra* at 154.

Boylston-Washington claims, however, that the evidence before the commission was exclusively hearsay and, relying on *Sinclair* v. *Director of the Div. of Employ-*

---

[2] Because we uphold the commission's finding that there was knowledge on the part of Boylston-Washington, we need not discuss the commission's contention on appeal that a lesser standard than knowledge of the licensee can be applied to find a violation of regulation 21 when, as here, an employee violates G. L. c. 272, § 26. See *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Commn.*, 372 Mass. 152, 153-154, 156-157 (1977).

*ment Security*, 331 Mass. 101 (1954), argues that hearsay alone cannot˙ suffice as substantial evidence to support the commission's finding. But here, although the entertainer did not appear at the agency hearing, the evidence was not exclusively hearsay. Thus, *Sinclair*, even if still viable, is inapplicable. *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Commn.*, 372 Mass. at 154. *United Food Corp.* v. *Alcoholic Beverages Control Commn.*, 375 Mass. 238, 244 (1978). *Burlington Package Liquors, Inc.* v. *Alcoholic Beverages Control Commn.*, 7 Mass. App. Ct. 186, 189 (1979).

There was direct testimony by the investigators describing the dancer's actions and her exposing herself to them at the bar. Her open sexual behavior in a public place lends support to the inference that her behavior was condoned by the management of the licensed premises. As pointed out in *Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Commn. (No. 1)*, 374 Mass. 547, 554 (1978), "The entertainer is normally acting with the knowledge and approval of her employer." See *Aristocratic Restaurant of Mass., Inc. (No. 2)*, *supra* at 567. This is particularly true where the conduct is open and not clandestine. See *Commonwealth* v. *Bucaulis*, 6 Mass. App. Ct. 59, 63-64 (1978).

The direct evidence was buttressed by the entertainer's statements as to her receiving a cut on the sale of the high priced champagne and the dimming of the lights in the booths. Although these statements under traditional rules would be considered hearsay and inadmissible, see *Simonoko* v. *Stop & Shop, Inc.*, 376 Mass. 929 (1978), we note that under Fed.R.Evid. 801(d)2(D) and proposed Mass.R.Evid. 801(d) 2 (D) these statements, if they relate to a matter within the scope of the dancer's employment, are not hearsay.[3]

---

[3] There is no need for us to consider whether, in this case, the statements related to matters within the scope of her employment or whether there was any evidence presented to the commission on this question.

In any event, under c. 30A, § 11(2), inserted by St. 1954, c. 681, § 1, "agencies need not observe the rules of evidence observed by courts . . . . Evidence may be admitted and given probative effect . . . if it is the kind of evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs." G. L. c. 30A, § 11(2). Under the standard of § 11(2), the statement of the investigator that the dancer said she would receive a commission is admissible and probative of the fact that the management knew of her solicitations. The dancer's commission depended on the management's approval and also required the cooperation of the bartender who would have had to collect an inflated price for the champagne. Similarly, the statement that the lights would be dimmed is an unlikely invention because if untrue, it would lead to immediate disappointment. On this record, it was reasonable to accept both hearsay statements as supporting the commission's finding of knowledge. Contrast the statements in *Goodridge* v. *Director of the Div. of Employment Security*, 375 Mass. 434, 437 (1978). We also note that since Boylston-Washington did not raise at the agency hearing a claim that these statements do not bind the management, it is now too late for it to make this argument. *Norway Cafe, Inc.* v. *Alcoholic Beverages Control Commn.,* 7 Mass. App. Ct. 37, 39 (1979).

We conclude that the record of the hearing before the commission contains substantial evidence to support the finding of a violation of regulation 21. "By her solicitation and conduct in a public place [Boylston-Washington's] entertainer engaged in acts of prostitution." *Aristocratic Restaurant of Mass., Inc. (No. 2), supra* at 568. The facts adduced before the commission support a finding that her actions were known to and permitted by the management. The judgment is reversed, and a judgment is to be entered upholding the decision of the commission.

*So ordered.*