Rico's of the Berkshires, Inc. *vs.* Alcoholic Beverages Control Commission & another. April 23, 1985. *Alcoholic Liquors*, License.

Armed with a search warrant, two plain-clothes detectives, two F.B.I. agents, and nine uniformed officers descended at 9:00 P.M. on March 3, 1983, upon Chuck's Place, a restaurant in Pittsfield. We may infer that the members of this task force found less than they were looking for. The contraband their five-hour search produced was approximately five and a half grams of cocaine (of an estimated value of $600), a pipe with traces of marijuana in it, and related trappings. The possessor of the drugs, Charles ("Chuck") Coppola, later pleaded guilty to possession of a controlled substance. In consequence, the licensing board of Pittsfield suspended the license of Chuck's Place for a month and ordered that Coppola's connections with the restaurant as an employee or a manager be severed for one year. The suspension and order turned on the licensing board's finding that Coppola, at the time he was arrested for possessing cocaine, played a significant role in the operation of the restaurant, and that his wife, the sole stockholder of the corporate owner of Chuck's Place, knew or had reason to know of his illegal conduct.

Chuck's Place appealed to the Alcoholic Beverages Control Commission (commission) which, after hearing, upheld the findings and disposition of the local board. G. L. c. 138, § 67. From that decision Chuck's Place sought review in the Superior Court under G. L. c. 30A, § 14. The case was placed before the court on cross motions for summary judgment, Mass.R.Civ.P. 56, 365 Mass. 824 (1974), an appropriate procedure since review is confined to the record, except where procedural irregularity before the agency is alleged. See. G. L. c. 30A, § 14(5); *New England Liquor Sales Co.* v. *Alcoholic Beverages Control Commn.*, 16 Mass. App. Ct. 921, 922 (1983). A judge of the Superior Court concluded that there was substantial evidence to warrant the commission's findings that Coppola possessed operating responsibility in the restaurant and that unlawful conduct was allowed to occur on the premises. He further determined that the one-month license suspension and the severance of Coppola were appropriate sanctions From the entry of a judgment affirming the commission's decision. Chuck's Place has appealed. We affirm.

1. There may be a bland charm to the restaurant's protestations that the record does not support a finding that Coppola had significant operational responsibility at Chuck's Place, but they strain credulity. The licensee faced formidable adverse evidence, including, but not limited to, the following: (1) a publicity puff with accompanying photograph, appearing in a local newspaper, on September 12, 1981, about the new owners, "Charles A. 'Chuck' Coppola and his wife, Joyce," of the restaurant renamed "Chuck's Place"; (2) an advertisement in the Berkshire Eagle, appearing on March 31, 1983, which bears at the top of the display: "A great restaurant must have more than a nice atmosphere . . . it must also serve outstanding food. Chuck Coppola, Owner/'Chuck's Place'"; (3) another advertisement, in the

Berkshire Lodging Guide, which included in its text, "In the Berkshires, it's not enough to be a good restaurant . . . you have to be a great restaurant. Chuck Coppola, Owner/'Chuck's Place'"; (4) the circumstance that on the night of the raid Coppola acted as if he were in charge at the restaurant; and (5) the concession by the restaurant's lawyer, as he pleaded for generous disposition before the licensing board, that "[T]here's no question he [Coppola] has a position of some authority." Moreover, a finder of fact could draw an inference about Coppola's status, perhaps not irresistible, but powerful, from the fact that the restaurant was called, after all, "Chuck's Place." This evidence constituted substantial evidence upon which the commission could base its license suspension. See *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Commn.*, 372 Mass. 152, 153 (1977); *Craven* v. *State Ethics Commn.*, 390 Mass. 191, 201 (1983); *Boylston-Washington, Inc.* v. *Alcoholic Beverages Control Commn.*, 8 Mass. App. Ct. 396, 398 (1979). There was no need to credit the testimony of Joyce Coppola (Chuck's wife), who owned all the stock in the restaurant business, or of Linda Mangiordi (Joyce's sister-in-law), that Coppola was, at most, a foot soldier in the business. Indeed, before she warmed to her testimonial theme, Mangiordi had said, "So when he opened up this place, he asked me to go work for him." All in all, the evidence pointed to an appreciable probability that the conclusion arrived at by the commission was correct. *Griffin's Brant Rock Package Store, Inc.* v. *Alcoholic Beverages Control Commn.*, 12 Mass. App. Ct. 768, 770 (1981). We do not think, as the appellant complains, that the trial judge seriously mischaracterized the findings made by the commission.

2. If, as Joyce Coppola claimed, she was the chief executive officer of the restaurant and was there daily, then the commission could reasonably invoke 204 Code Mass. Regs. 2.05(2) (1978), which provides that "[n]o licensee for the sale of alcoholic beverages shall permit any disorder, disturbance or illegality of any kind to take place in or on the licensed premises. The licensee shall be responsible therefor, whether present or not." The commission could infer from the drug paraphernalia found by the raiding squad (scales, snorting tube) and the drug itself that a manager who wanted to see would have seen. In any event, under the regulation, the responsibility of the licensee is to exercise sufficiently close supervision so that there is compliance with law on the premises. A vendor who sells alcohol is "bound at his own peril to keep within the condition of his license." *Commonwealth* v. *Gould*, 158 Mass. 499, 507 (1893). *Burlington Package Liquors, Inc.* v. *Alcoholic Beverages Control Commn.*, 7 Mass. App. Ct. 186, 190 (1979). It is, thus, quite possible for a licensee to offend the regulatory scheme without scienter. Indeed, in the instant case, there was evidence before the commission that the original license was granted upon the understanding (not, however, incorporated in the license) that Coppola, who had an earlier conviction on gaming charges, would have no interest in the restaurant business. See and compare *New Palm Gardens, Inc.* v. *Alcoholic Beverages Control Commn.*, 11 Mass. App. Ct. 785, 798 (1981).

3. Although brief, the commission's findings are sufficient to support its decision. Notably, those findings touched on Coppola's activity in operating the restaurant and Mrs. Coppola's responsibility for knowing Coppola's drug-related activities. Compare *New Palm Gardens, Inc.* v. *Alcoholic Beverages Control Commn.*, 11 Mass. App. Ct. at 799; *Charlesbank Restaurant, Inc.* v. *Alcoholic Beverages Control Commn.*, 12 Mass. App. Ct. 879 (1981).

4. The managerial responsibility of Coppola distinguishes this case from those cited to us by the appellant from other jurisdictions, were they applicable under our law, which involved isolated infractions by lower level employees or customers. See and contrast *G & B of Jacksonville, Inc.* v. *State Dept. of Bus. Regulation*, 366 So.2d 877 (Fla. App. 1979); *De Palo* v. *New York State Liquor Authy.*, 82 A.D.2d 831, aff'd, 54 N.Y. 2d 950 (1981); *La Vigna Restaurant Corp.* v. *New York State Liquor Authy.*, 83 A.D.2d 867, 868 (N.Y. 1981); *Underwood* v. *State Bd. of Alcoholic Control*, 278 N.C. 623, 630-632 (1971).

5. Chuck's Place argues that so much of the order as requires Coppola's separation from any activity as its employee is beyond the authority of the commission. The authority of a local board to impose conditions upon a license is not unlimited. See *Hub Nautical Supply Co.* v. *Alcoholic Beverages Control Commn.*, 11 Mass. App. Ct. 770, 774 (1981). Here, however, the one-year limitation upon Coppola's participation was related to his offense. A user of unlawful drugs may rationally be thought unfit to dispense a legal drug, i.e., alcohol. The commission has "comprehensive powers of supervision over licensees." *New Palm Gardens, Inc.* v. *Alcoholic Beverages Control Commn.*, 11 Mass. App. Ct. at 788, quoting from *Connolly* v. *Alcoholic Beverages Control Commn.*, 334 Mass. 613, 617 (1956).

*Judgment affirmed.*

*Robert M. Fuster* (*Brian J. Litscher* with him) for the plaintiff.

*Madeline Mirabito Becker*, Assistant Attorney General, for Alcoholic Beverages Control Commission.